## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BOBBY E. HAZEL,**

        **Plaintiff,**

**v.**                                        **Civil Action No. 2:09cv70**
                                                  **(Judge Maxwell)**

**HARLEY LAPPIN, JOE DRIVER,**
**JEFF BOYLES, DR. JORGE S. VAZQUEZ,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this civil rights action on September 26, 2008, in the United States District Court for the District of Columbia. (Dckt. 1) The D.C. Court granted the plaintiff permission to proceed as a pauper on September 26, 2008 (Dckt. 6), and issued summonses on October 20, 2008.

On November 21, 2008, the plaintiff filed his "First Supplement." (Dckt. 14)

On December 8, 2008, the plaintiff filed a "Second Supplement." (Dckt. 17) That document was later stricken by the D.C. Court. (Dckt. 18)

On January 30, 2009, the defendants filed a "Motion to Reconsider Granting Plaintiff's Motion for Leave to Proceed In Forma Pauperis." (Dckt. 22) In their motion, the defendants asserted that pursuant to 28 U.S.C. § 1915(g), the plaintiff had accumulated "three strikes" for filing at least three previous complaints that were dismissed as frivolous, malicious, or for the failure state a claim. Therefore, the defendants asked the D.C. Court to reconsider its Order granting the plaintiff

*in forma pauperis* status and to vacate that Order. In the alternative, the defendants outlined the plaintiff's status as a prolific filer and asked the D.C. Court to, in its discretion, deny the plaintiff *in forma pauperis* status because he has abused the system.

On February 4, 2009, the D.C. Court denied the defendants' motion to reconsider. (Dckt. 25). In doing so, the Court found that the plaintiff had in fact accumulated three strikes under § 1915(g). Moreover, the D.C. Court found that the plaintiff was a prolific filer. Nonetheless, the D.C. Court also found that the defendants failed to address whether the plaintiff could meet the "imminent danger" exception found in § 1915(g). Taking the matter up *sua sponte*, the Court found that the plaintiff's allegation that the defendants failed to provide him treatment for Hepatitis C, a potentially fatal disease, meets the "imminent danger" exception, and that notwithstanding the plaintiff's prolific history, he was not barred from proceeding *in forma pauperis* in this case. Accordingly, the D.C. Court dismissed the defendants' motion to reconsider the plaintiff's *in forma pauperis* status.

On February 26, 2009, the defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (Dckt. 29) In the motion, the defendants asserted that the plaintiff had failed to exhaust at least one of his claims and that he otherwise failed to state a claim for which relief could be granted.

The plaintiff filed his opposition to the defendants' motion on March 17, 2009 (Dckt. 32) and a supplemental memorandum in opposition (Dckt. 33) on March 23, 2009.

The defendants filed a reply on April 30, 2009. (Dckt. 39)

On May 15, 2009, the D.C. Court denied without prejudice the defendants' motion and transferred this case to this Court. (Dckt. 42) The case was transferred to this Court on June 5, 2009

and received by this Court on June 9, 2009.

On June 18, 2009, this Court conducted a preliminary review of the complaint and determined that service upon the United States Attorney for the Northern District of West Virginia was necessary. (Dckt. 47) Service was accepted on June 19, 2009. (Dckt. 48)

On August 14, 2009, the plaintiff filed a Motion to Amend his Complaint (Dckt. 59) and a Motion for Preliminary Injunction (Dckt. 60). The plaintiff's motion to amend was granted on August 20, 2009 and the defendants' answer deadline was extended accordingly. (Dckt. 61)

On October 20, 2009, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dckt. 70) Because the plaintiff is proceeding *pro se*, a <u>Roseboro</u> Notice issued the next day. (Dckt. 72) The plaintiff filed his response on November 12, 2009. (Dckt. 12)

On November 18, 2009, the plaintiff filed a "Motion for Discovery and to Stay a Ruling on the Defendants' Motion for Summary Judgment." (Dckt. 79) In the motion, the plaintiff seeks permission to conduct discovery as to his claim involving testicular pain and asks the Court to stay its ruling on the defendants' summary judgment motion until such time as that discovery is complete.

## II.   Contentions of the Parties

### A.   The Complaint

In the complaint, the plaintiff asserts that he was transferred to the Hazelton Penitentiary in Bruceton Mills, West Virginia (USP-HAzelton), on November 19, 2006. Shortly thereafter, the plaintiff began to experience sharp pain in his left side. The plaintiff went to an officer in his cell block and requested permission to go to the prison infirmary. At the medical unit, the plaintiff complained of pain in his stomach to the care provider. The plaintiff was informed that a stomach virus was going around the prison and was sent back to his cell.

Two days later, the plaintiff went to the medical unit complaining of diarrhea. He was given medication. A short time later, the plaintiff returned to the medical unit complaining of pain in the lower area of his body. A blood test was ordered and the plaintiff was given medication for an infection.

A week later, the plaintiff again went to the medical unit complaining of pain in the lower area of his body. When the care provider examined the plaintiff's eyes, they were yellow. The care provider informed the plaintiff that there was something wrong with his liver and to sign up to see the doctor the next day. The next day, the plaintiff arrived at the medical unit and was transported to West Virginia General Hospital ("WVGH").

At WVGH, a doctor informed the plaintiff that he had Hepatitis C and an infection. The plaintiff was allegedly told that he "was not going to make it" and was not provided any medical treatment during his stay. The plaintiff remained in the hospital for 21 days and then returned to USP-Hazelton on January 15, 2007.

On January 16, 2007, the plaintiff was seen at the medical unit by Dr. Vazquez. The plaintiff alleges that Dr. Vazquez told him that officials at USP-Lewisburg transferred him to Hazelton to die.

On January 24, 2007, the plaintiff was transported to the Federal Medical Center in Springfield, Missouri ("FMC-Springfield"). Upon examination there, the plaintiff was told that he was jaundiced and that his problems may have been caused by gallstones.

While at FMC-Springfield, the plaintiff became very ill. On March 6, 2007, blood and urine tests were taken and it was determined that the plaintiff had a urinary tract infection. The plaintiff was placed on medication.

The plaintiff was then assigned a new primary care provider. The new provider, Dr. Hare,

informed the plaintiff that he may need surgery to remove his gallbladder. The plaintiff was examined by a specialist who recommended not having gallbladder surgery at that time.

On June 12, 2007, the plaintiff was returned to USP-Hazelton. The plaintiff asserts that prior to his transfer, he was prescribed certain medical care treatment for his gall bladder problems and a medical diet.

On June 25, 2007, the plaintiff went to the medical unit complaining of pain in the lower area of his body. A care provider examined the plaintiff and determined that the plaintiff had an infection. The plaintiff was given medication.

The plaintiff alleges that he made numerous other complaints to the defendants about pain in his lower body. The plaintiff asserts that although numerous opinions have been offered, no action has been taken.

As a result of the above allegations, the plaintiff asserts the following:

(1) the defendants failed to provide him adequate medical treatment by not performing a thorough examination and failing to provide the appropriate tests to determine his illness;

(2) the defendants breached the duty of care they owed the plaintiff when they failed to detect through the blood and urine tests, that the plaintiff had an infection;

(3) the defendants failed to follow and interfered with the doctor prescribed medical treatment instructions upon his release from FMC-Springfield;

(4) the defendants failed to perform a thorough examination of the plaintiff when he continued to have severe urinary and testicular problems, or to conduct the appropriate tests to determine the source of his pain; and

(5) the defendants failed to provide or interfered with his prescribed medical diet.

As relief for these alleged violations of his constitutional rights, the plaintiff seeks $1,000,000 in compensatory damages from each defendant and $2,000,000 in punitive damages.

## B.   The Plaintiff's First Supplement

In the supplement, the plaintiff asserts that while at the WVGH, medical officials there recommended that he receive a liver biopsy in the future to evaluate his liver's response to the Hepatitis C and other treatment for his Hepatitis C. However, after his release back to USP-Hazelton on January 16, 2007, the plaintiff asserts that he never received the recommended treatments. Similar requests made to the medical staff at FMC-Springfield were also refused.

The plaintiff sought relief for the denial of his requests in the Bureau's administrative remedy program. In response to his National Inmate Appeal, the plaintiff was informed that he had been approved for a liver biopsy.

On June 6, 2008, the plaintiff was transported to WVGH for a liver biopsy. Afterwards, he was informed that the biopsy revealed "moderate chronic inflammation, limited to the portal regions, and mild vein dilation without evidence of congestion. These findings explain the chronic side pains you are experiencing. This is a result of the variations in chronic viral hepatitis discease (sic.)" Supplement (Dckt. 14) at 2. The plaintiff asserts that after learning the results of his liver biopsy, he made numerous requests for treatment, but received none.

Also at FMC-Springfield, the plaintiff requested a consultation for "evaluation of potential biliary colio secondary to calculous cholecystitis." *Id*. at 3. The plaintiff received an ultrasound which showed "some sludge," but no calculi. The plaintiff also underwent a HIDA scan which was inconclusive because of a machine malfunction. Moreover, it was recommended by the general surgeon that because the plaintiff was asymptomatic at the time, with no calculus disease, surgery

was not recommended. However, the surgeon also stated that if symptomology recurred consistent with biliary colic, a repeat HIDA scan should be performed.

On October 10, 2008, the plaintiff went to the medical unit complaining of pain in both sides and the lower area of his body. The plaintiff informed the care provider of his gallbladder problems. The plaintiff was prescribed Dicyclomine HCL 20 mg tab. The plaintiff was provided patient medication information on October 21, 2008. According to the plaintiff, the information stated that the use of the medication was not recommended if the patient has "blockage of the esophagus, stomach, intestine, or urinary tract, heart problems due to severe bleedings, glaucoma, inflammation of the esophagus due to acid reflux, loss of strenght (sic) in the intestinal muscles, chronic inflammation and ulceration of the bowels, or myastheria gravis." *Id.* at 3. The plaintiff asserts the care provided failed to determine whether the plaintiff suffered from any of the above illnesses prior to prescribing the medication. Moreover, the plaintiff asserts that he has been diagnosed with chronic inflammation and ulceration. He also asserts that when he took the medication, he became very ill. The plaintiff has made several requests for sick call, but has not been called.

As a result of the allegations made in the first supplement, the plaintiff asserts the following:

(1) the defendants failed to provide the plaintiff medical care when recommended; and

(2) the defendants failed to acknowledge the plaintiff's complaints of pain on both sides of his body and in the lower area and the general surgeon's recommendation for a repeat HIDA.

## C.   The Plaintiff's Amendment to his Complaint

In the amendment to the plaintiff's complaint, he states that the defendants are being sued in their individual capacities. Moreover, the plaintiff adds a claim of retaliation against defendant Vazquez.

As to the retaliation claim, the plaintiff asserts on November 24, 2009, he went to the medical unit complaining about pain in both his sides and the lower area of his body. The plaintiff was referred to Dr. Vazquez and was seen the next day. The plaintiff asserts that he informed Dr. Vazquez that he was told by Warden Driver to go the medical unit after the cause of his pain was revealed by the liver biopsy. The plaintiff also informed Dr. Vazquez that he was not receiving the prescribed medical care for his gallbladder problems. Dr. Vazquez allegedly told the plaintiff that the prescribed treatment plan was old and that new tests would need to be conducted on the plaintiff. Moreover, Dr. Vazquez allegedly stated that he heard the plaintiff had filed a civil rights complaint against him. Thereafter, Dr. Vazquez allegedly refused to provide the plaintiff with any medical care. As a result, the plaintiff asserts that he has had to obtain medication from other inmates.

**D.    Defendant's Motion to Dismiss, or for Summary Judgment**

In their memorandum in support of their motion (Dckt. 71), the defendants assert that the complaint should be dismissed, or judgment granted in their favor, for the following reasons:

(1) pursuant to 28 U.S.C. § 1915(g), the plaintiff is barred from bringing this action without first paying the full filing fee;

(2) defendant Boyles, a Public Health Employee, is immune from Bivens[1] liability;

(3) the Court lacks personal jurisdiction over defendant Lappin;

(4) the plaintiff's retaliation claim against defendant Vazquez should be dismissed for the failure to exhaust;

(5) the plaintiff's retaliation claim against defendant Vazquez is without merit;

_____

[1] Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971) (authorizing suits against federal officials in their individual capacities).

(6) the plaintiff has failed to allege any personal involvement on the part of defendants Lappin, Driver and Boyles;

(7) the plaintiff has failed to state a claim for which relief may be granted; and

(8) the defendants are entitled to qualified immunity.

## E.   The Plaintiff's Response to the Defendants' Motion

In his response, the plaintiff first asserts that he has shown that the defendants were personally involved with the alleged violation of his constitutional rights.  Second, he asserts that he has in fact established that a violation of his constitutional rights has occurred.  Next, the plaintiff asserts that he is being retaliated against for exercising his constitutional rights.  Finally, the plaintiff argues that the defendants are not entitled to qualified immunity.

## F.   The Plaintiff's Motion for Preliminary Injunction

In this motion, the plaintiff asserts that for more than two years, the defendants have denied him appropriate medical care.  The plaintiff asserts that because of such behavior, there is a substantial likelihood that he will suffer irreparable harm if an injunction is not granted.  Moreover, the plaintiff asserts that the threat of injury to him outweighs any potential injury to the defendants and that there is a substantial likelihood that he will succeed on the merits of his claims.  Because the public interest would not be "disserved" by granting such relief, the plaintiff seeks an Order from this Court which directs the defendants to provide him with appropriate medical care.

## G.   The Plaintiff's Motion for Discovery and to Stay Ruling

In this motion, the plaintiff asserts that in his opposition to the defendants motion for summary judgment he argues as to his urological and testicular pain and complications.  The plaintiff further asserts that the defendants have not provided him with the appropriate medical care for these

conditions, nor have they sent him to a urology specialist to determine the cause of his suffering. The plaintiff asserts that the defendants "may" possess certain documents which could help him establish his right to relief as to this claim. Thus, the plaintiff seeks any information the defendants may possess which could establish a genuine issue of material fact with respect to this claim.

### III.   Standard of Review

#### A.   Motion to Dismiss

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

#### B.   Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.   Analysis

### A.   Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

#### 1.   Dismissal Under Three Strikes Rule of 28 U.S.C. § 1915(g)

This issue was decided by the D.C. Court prior to the transfer of this case to this Court. Therefore, the undersigned is of the opinion that this Court should decline to revisit this issue without a showing of clear error on the part of the D.C. Court. Because the defendants have made no such showing, this Court should not consider this argument further.

2. Failure to Exhaust Retaliation Claim

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741 n. 6.

In this case, the retaliation claim that the plaintiff alleges, occurred well after the filing of this complaint.[3] Thus, it was not possible for the plaintiff to exhaust this claim prior to filing suit.[4] In

---

[2] Porter at 524.

[3] The alleged retaliation occurred on November 24, 2008 and beyond. Amd. Cmplt (Dckt. 59) at 2.

[4] The Bureau of Prisons ("BOP") makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq.

addition, the plaintiff has not filed any grievances with regard to this alleged retaliation. See Defs. Ex. 1 (Declaration of Kevin Littlejohn). Therefore, the plaintiff's retaliation claim should be dismissed. See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

### 3. Immunity of Defendant Boyles

Constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority. In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court found two instances in which a Bivens action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19 (emphasis in original).

With regard to Public Health Officers, Congress has explicitly stated that the exclusive remedy for personal injury resulting from the medical decision of a commissioned officer of the Public Health Service while acting within the scope of his employment is against the United States under the FTCA. See 42 U.S.C. §233(a) ("The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage

_____

This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Gilmer, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies. See Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) (the PLRA requires full and proper exhaustion).

for personal injury, including death, resulting from the performance of medical, surgical, dental or related function . . . by any commissioned officer of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.). Therefore, claims against Public Health Officers cannot be maintained under Bivens.

In this case, the undisputed evidence shows that defendant Boyles is employed by the United States Public Health Service and is assigned to USP-Hazelton as the Health Services Administrator. See Defs. Ex. 8 (Declaration of Harold Boyles)[5] at ¶ 1-3. Because the actions complained of in the complaint occurred while defendant Boyles was acting within the scope of his employment with the Public Health Service, he is immune from personal liability in this case.

### 4. Defendants Lappin and Driver

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v.

---

[5] The plaintiff incorrectly named "Jeff" Boyles in the caption of this caption. The defendants actual name is Harold Boyles. Defs. Memorandum (Dckt. 71) at 7, n. 1.

Good, 423 U.S. 362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.* In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. *Id.*

In this case, the plaintiff does not allege any personal involvement on the part of defendants Lappin or Driver in his actual medical care or treatment. Instead, it appears that the plaintiff has named these defendants merely in their official capacities as the Director of the BOP and the Warden at USP-Hazelton, respectively. Nevertheless, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Remedy under Bivens, however, is

15

against federal officials in their individual capacities, not against the federal government. Moreover, the plaintiff has not provided any evidence that defendants Lappin or Driver tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain a <u>Bivens</u> claim against defendants Lappin and Driver and those defendants must be dismissed from this action.[6]

     5.   <u>Defendant Dr. Vazquez/Merit of Plaintiff's Deliberate Indifference Claim</u>

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990), <u>cert. denied</u>, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing

---

[6] To the extent the plaintiff asserts that defendants Lappin or Driver were deliberately indifferent to his serious medical needs by denying his administrative requests, that claim is without merit. This is not the type of personal involvement required to state a <u>Bivens</u> claim. <u>See</u> <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

that the prison official acted with deliberate indifference. <u>Wilson</u>, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." <u>Id.</u> at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d at 851. A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." <u>See Morales Feliciano v. Calderon Serra</u>, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003)).

In addition, the test for deliberate indifference "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [as it] remains a question of sound professional judgment. <u>Bowring v. Godwill</u>, 551

F.2d 44, 48 (4th Cir. 1977).

For the following reasons, the plaintiff fails to show that defendant Vazquez was deliberately indifferent to his serious medical needs.

According to his medical records, the plaintiff was first seen by the medical department on November 30, 2006, only two days after his arrival at USP-Hazelton. See Defs. Ex. 7 (Declaration of Jorge Vazquez Velazquez, M.D.) at ¶ 4 and Att. A. On that date, and again on December 4, 2006, the plaintiff complained of nerve damage to his left knee. *Id*.

On December 15, 2006, the plaintiff was seen for the first time for stomach cramping. *Id*. at ¶ 5 and Att. B. The plaintiff was examined and diagnosed with a possible viral syndrome. *Id*. The plaintiff was told to drink plenty of fluids, rest and report back to medical if his symptoms persisted. *Id*. Later that month, the plaintiff complained of diarrhea and abdominal pain of three occasions. *Id*. at ¶ 6 and Att. C. Each time, he was examined by medical staff and given medication and intravenous fluids. *Id*. Lab tests were also ordered. *Id*.

Because he suffered from continuing medical issues, the plaintiff was taken to WVGH on December 29, 2006. *Id*. at ¶ 7 and Att. D & E. The plaintiff was diagnosed with acute severe hepatitis-improving and chronic Hepatitis C infection. *Id*. The plaintiff was returned to USP-Hazelton on January 15, 2007. *Id*.

After his release from WVGH, the plaintiff was transferred to FMC-Springfield to receive special treatment and to be evaluated for liver disease. *Id*. at ¶ 8 and Att. F & G. Upon his arrival, it was noted that the plaintiff suffered from liver dysfunction, Hepatitis B and C and hypertension. *Id*. at ¶ 8 and Att. G. At that time, it was determined that the plaintiff suffered from acute liver dysfunction, secondary to Hepatitis, and/or an obstructive process. *Id*.

While at FMC-Springfield, the plaintiff developed a urinary tract infection on March 6, 2007. *Id.* at ¶ 10 and Att. I. After a round of antibiotics, the plaintiff's condition was resolved on May 17, 2007. *Id.* Also while at FMC-Springfield, the plaintiff received an ultrasound of his gallbladder. *Id.* The ultrasound revealed that the plaintiff's gall bladder wall was thickening, but no evidence of gallstones. *Id.* A radioculide hepatobiliary scan of the plaintiff's gallbladder was also performed. Based on the finding of that scan, the plaintiff received a surgical consult. *Id.* However, the surgeon found the plaintiff asymptomatic, with no evidence of gallbladder disease, so surgery was not recommended. *Id.* Nonetheless, the surgeon found that if symptomology occurred, the plaintiff should have another scan and possible surgery to remove his gallbladder. *Id.*

After his final diagnosis, the plaintiff was returned to USP-Hazelton on June 12, 2007. *Id.* at ¶ 12 and Att. F. Upon his arrival, the plaintiff was placed in a chronic care clinic and seen at regular intervals by the medical staff. *Id.* The plaintiff also made sick calls as needed. *Id.*

On June 25, 2007, the plaintiff was diagnosed with epididymitis, the swelling of the tube that connects the testicles with the vas deferens. *Id.* at ¶ 13 and Att. K. The plaintiff's infection was treated successfully. *Id.*

On June 6, 2008, the plaintiff received a liver biopsy. *Id.* at ¶ 14 and Att. L & M. The biopsy showed moderate chronic inflammation without congestion or obstruction. *Id.* However, because of his Hepatitis and chronic liver inflammation, the plaintiff's viral loads and liver enzymes were monitored regularly for complications. *Id.* Specifically, testing has been done on the plaintiff on August 7 and 11, 2008; December 30, 2008; February 25, 2009; March 9, 2009; and April 1, 2009. *Id.* Each of these tests showed that the plaintiff was not experiencing any complications. *Id.* Therefore, the only appropriate treatment for his conditions was pain medication to manage his

abdominal discomfort. *Id*.

It is quite clear from the plaintiff's medical records that his medical conditions have been appropriately attended to by staff. For each of his complaints, the plaintiff has been seen by medical staff. When conditions warranted it, the plaintiff was taken to an outside hospital and transferred to a Federal Medical Center for specialized care. The plaintiff has received numerous tests including blood tests, ultrasounds and a liver biopsy. The plaintiff has seen more than one specialist and has had surgical consults. Given these circumstances, there is no question that the plaintiff has been receiving adequate medical care.

In the absence of a deliberate indifference claim, the undersigned concludes from Plaintiff's complaint that he is simply unhappy with the course of treatment that has been prescribed. However, that is not sufficient grounds to state a claim of deliberate indifference. In addition, the plaintiff provides no evidence that the defendants failed to place him on a prescribed medical diet or that they prescribed medicine to him that made him sick. To the contrary, the plaintiff was released from FMC-Springfield on a regular diet and his primary care provider is not aware of him ever being sick due to his medications. *Id*. at ¶ 16 and Att. N & J. Thus, there is simply no evidence to establish that Dr. Vazquez, or any other person, deprived the plaintiff of adequate medical care or that they did so with a "sufficiently culpable state of mind." Therefore, the plaintiff has failed to establish that the defendants were deliberately indifferent to his serious medical needs.

**B.** **Plaintiff's Motion for Preliminary Injunction**

In the Fourth Circuit, the standard for preliminary injunctions is set forth in <u>Real Truth About Obama, Inc. v. Federal Election Comm'n</u>, 575 F.3d 342 (4th Cir.2009). As articulated in <u>Real Truth</u>, the test requires a plaintiff to establish "(1) that he is likely to succeed on the merits, (2) that he is

likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id*. at 346 (citations omitted).

For the reasons previously stated, the plaintiff cannot show a likelihood of success on the merits of his claim. Therefore, his motion for injunctive relief should be denied.

## C.   **Plaintiff's Motion for Discovery and to Stay**

Pursuant to Rule 26(a)(1)(E)(iii), discovery is not permitted in "an action brought without counsel by a person in custody of the United States, a state, or a state subdivision," without the express permission of the Court.

Here, the plaintiff asserts in his motion that the defendants *may* have records that *might* help him establish his claim with respect to his urinary and testicular issues. He has not shown, however, what documents the defendants may possess or how they would help him establish his case, nor has he showed with any specificity, a need for discovery in this case. Because the Court should not sanction a fishing expedition without good cause, see Hill v. Johnson, 210 F.3d 481, 487 (5th Cir. 2000), the plaintiff's request for discovery, and to stay a ruling on the defendant's summary judgment motion, should be denied.

## V.   **Recommendation**

For the reasons set forth herein, the undersigned makes the following recommendations:

(1) the plaintiff's Motion for Preliminary Injunction (Dckt. 60) be **DENIED**;

(2) the plaintiff's Motion for Discovery and to Stay (Dckt. 79) be **DENIED**; and

(3) the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dckt. 70), be **GRANTED** and this case be **DISMISSED with prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: November 30, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE